## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SHAKIA SCOTT                                    :
                                               :
                                               :
     v.                 :     Civil No. CCB-14-3695                    :
                                               :
MARYLAND DEPARTMENT OF          :
PUBLIC SAFETY AND                       :
CORRECTIONAL SERVICES          :                                    :

### MEMORANDUM

Plaintiff Shakia Scott brings suit for employment discrimination against her employer, the Maryland Department of Public Safety and Correctional Services ("MDPSCS"), alleging gender discrimination and retaliation in violation of Title VII. The defendant filed a motion to dismiss or, in the alternative, for summary judgment. The issues in this case have been fully briefed, and no hearing is necessary. *See* Local R. 105.6. For the reasons stated below, MDPSCS's motion – treated as a motion to dismiss – will be granted in part and denied in part.

### BACKGROUND

Scott has been employed as a correctional officer by MDPSCS since April 27, 2011. (Compl. ¶¶ 2, 7, ECF No. 1.) In August 2011, Scott's supervisor Lieutenant John Davis told her that she reminded him of his "baby mother" and they "should make kids together." (Compl. ¶ 8.) Scott told Davis she was not interested in him and she was offended. (Compl. ¶ 8.)

Davis continued to make sexually suggestive comments to Scott whenever he saw her at work, including that Scott looked like his "baby mother," that he wanted to "make a baby" with her, and that she was "thick and light skin." (Compl. ¶ 9.) In late 2011, Scott reported Davis' actions to Captain Redd, but Redd said Scott should not "worry about it" because Davis was not

touching her. (Compl. ¶ 9.)

After Scott reported Davis' actions to Redd, Davis denied Scott's requests for work assistance, refused to take work-related information from her, and failed to follow up with inmate issues that Scott reported. (Compl. ¶ 10.) Scott began documenting Davis' actions in a log book, and when Davis found out, Davis began calling her a "snitch." (Compl. ¶ 10.) Scott told Redd that Davis called her a "snitch," but Redd said Davis was joking. (Compl. ¶ 10.)

On April 12, 2012, Scott told Davis that a water cooler used by inmates was missing. (Compl. ¶ 11.) Davis dismissed her report and cursed at her in front of inmates. (Compl. ¶ 11.) He then pressed his body against hers so that his chest was touching her arm. (Compl. ¶ 11.). He leaned over and whispered in her ear, placing his lips on her right ear lobe. (Compl. ¶ 11.) He told her that he liked seeing her "angry" and said, "I did not sleep with you last night and put marks of passion on you, so don't get sassy because I could have." (Compl. ¶ 11.) Scott tried to shield her ear and told Davis to move away and that he was "very disrespectful and violating [her] as a woman." (Compl. ¶ 12.) In response, Davis told Scott that she "was the disrespectful one" and that he can "lean on whoever and whatever to talk, that's how I talk[.] I have the right to do that." (Compl. ¶ 12.) Scott then called Captain Hickson, the shift commander, and told him that she needed to report an incident. (Compl. ¶ 13.) Hickson told Scott to go in the break room with Davis and "talk in the break room before we talk about writing." (Compl. ¶ 13.) Scott refused to go in the break room with Davis. (Compl. ¶ 13.) She went to the major's office and was told to document the incident on the "Matter of Record – Information Report." (Compl. ¶ 14.)

Hickson told Scott to return to the building supervised by Davis, but to a different post.

(Compl. ¶ 15.) Hickson said loudly in front of other officers that he wanted to talk to Scott but he "would need another person in the room because [he's] not trying to lose [his] bars on [his] chest that [he] just got." (Compl. ¶ 15.)

After Scott reported Davis in the Matter of Record, her "superiors began denying Plaintiff's request for help[;] Plaintiff was assigned to security posts by herself, although these post assignment[s] are usually staffed with two officers; Plaintiff was subjected [to] constant open remarks by supervisors telling officers to be careful around Plaintiff because of Plaintiff's reporting on Lt. Davis; Plaintiff was denied requested days off[;] Plaintiff's request for a change of shift was denied[;] and Plaintiff was singled out and labeled as a 'snitch' by some of Plaintiff's superiors." (Compl. ¶ 16.)

Scott claims she has exhausted administrative remedies because she timely filed charges of discrimination against MDPSCS with the Equal Employment Opportunity Commission (EEOC) and filed this complaint within 90 days after receiving a notice of the right to sue from the EEOC. (Compl. ¶ 6.)

## ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The

mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted).

**I. Sexual Harassment**

Scott alleges that MDPSCS subjected her to a hostile work environment based on her sex in violation of Title VII. (Compl. ¶ 18-19.) MDPSCS argues that this claim is barred because Scott failed to file a timely administrative charge of discrimination based on sex and because she does not state a claim of a hostile work environment. Each argument will be addressed in turn.

### A.  Timeliness

An EEOC charge must be filed within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). This period is extended to 300 days in a deferral state, such as Maryland, which has a local or state agency with authority to grant or seek relief. *Id.* "Timeliness requirements for an action alleging employment discrimination are to be strictly enforced." *Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 597 (D.Md. 2000) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)). Accordingly, charges filed outside the time frame are barred. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996).

The statute of limitations is considered an affirmative defense*, see* Fed. R. Civ. P. 8(c), and courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). "Where, however, 'a defendant attaches a document to its motion to dismiss, a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D.Md.2011) (quoting *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir.2004) (internal quotation marks omitted)). Here, the defendant attached to its motion to dismiss a copy of Scott's official EEOC charge of discrimination (ECF No. 12-2) and the notice of charge of discrimination received by MDPSCS on January 28, 2013 (ECF No. 12-3). The EEOC charge of discrimination and notice of discrimination are integral to the complaint and Scott has not contested their authenticity. Additionally, Scott attached multiple exhibits to

her opposition, including an intake questionnaire filed with the EEOC. (ECF No. 17-5.) The

court concludes that the EEOC intake questionnaire attached to Scott's opposition to the motion

to dismiss is integral to the complaint because Scott's claim that she timely filed charges of

discrimination with the EEOC is a reference to the intake questionnaire, as the later charge of

discrimination is not timely. (Compl. ¶ 6.).[1] Accordingly, the court will consider the EEOC

intake questionnaire, the charge of discrimination, and the notice of discrimination without

converting the defendant's motion into one for summary judgment.

Title VII mandates that a charge be "in writing under oath or affirmation." 42 U.S.C. §

2000e–5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing

and signed and shall be verified"). EEOC regulations define "verified" to mean "sworn to or

affirmed before a notary public, designated representative of the [EEOC] or other person duly

authorized by law..., or supported by an unsworn declaration in writing under penalty of

perjury." 29 C.F.R. § 1601.3. An unverified document that satisfies the other substantive

requirements for a charge can be cured by a later-filed charge that is verified, in which case the

verified charge relates back to the filing date of the unsworn charge. *See* 29 C.F.R. § 1601.12(b);

*Edelman v. Lynchburg Coll.*, 535 U.S. 106, 118 (2002) (upholding relation back). Although

EEOC regulations characterize the failure to verify a charge as a "technical defect," 29 C.F.R. §

1601.12(b), the Fourth Circuit has held that compliance with Title VII's verification requirement

is "mandatory," *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir.1994).

Title VII requires that a charge "contain such information and be in such form as the

---

[1] Other courts in this district have considered an EEOC intake questionnaire attached to a plaintiff's opposition in
reviewing a motion to dismiss under Rule 12(b)(6). *See Rhodes v. Montgomery Cnty. Dep't of Corr. & Rehab.*, No.
12-CV-03172-AW, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013); *Mekonnen v. AIMCO Properties, L.P.*, No.
PWG-12-1304, 2013 WL 588976, at *1 n.1 (D. Md. Feb. 13, 2013).

[EEOC] requires." 42 U.S.C. § 2000e–5(b). Pertinent EEOC regulations state that a charge shall contain the following information: (1) the full name, address, and telephone number of the person making the charge; (2) the full name and address of the person against whom the charge is made; (3) a clear and concise statement of the facts, including relevant dates, regarding the alleged unlawful practices; (4) if known, the approximate number of employees of the respondent; and (5) a statement disclosing whether any proceedings regarding the alleged unlawful practices have been commenced before a state or local agency. 29 C.F.R. § 1601.12(a). The EEOC regulations also contain a catchall clause, which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.* § 1601.12(b). In addition to satisfying the EEOC regulations, to be deemed a charge, a filing must also "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

The intake questionnaire Scott submitted to the EEOC in January 2013 serves as a charge for the purpose of establishing the limitations period because it satisfies EEOC regulations and the additional *Holowecki* requirement. *See Holowecki*, 552 U.S. at 406. The intake questionnaire includes Scott's name and contact information. (Intake Questionnaire.) It also identifies Davis as the person responsible for the discrimination and provides the name and contact information of MDPSCS. (*Id.*) Scott attached a statement of facts describing the employment discrimination, including that on April 12, 2012, Davis "ma[de] comments about not sleeping with [Scott] the night before but wanting to and suggesting that he could have put passion marks on [her] body"

and "Davis leaned towards [her] and slightly allowed his lips to touch [her] ear." (*Id.*) The intake

questionnaire also includes a statement disclosing that Scott previously filed a complaint with the

"EEO Division" on April 13, 2012. (*Id.*) Therefore, the intake questionnaire fulfills the

requirements of a charge. *See* 29 C.F.R. § 1601.12. Additionally, Scott's intake questionnaire

satisfies the *Holowecki* requirement that a charge must be "reasonably construed as a request for

the agency to take remedial action." *Holowecki*, 552 U.S. at 402. The questionnaire Scott filed

has two alternate boxes, and the form provides instructions that "[i]f you want to file a charge,

you should check Box 2." Scott checked Box 2, which states

> I want to file a charge of discrimination, and I authorize the EEOC to look into the
> discrimination I described above. I understand that **the EEOC must give the employer,
> union, or employment agency that I accuse of discrimination information about the
> charge, including my name.** I also understand that the EEOC can only accept charges of
> job discrimination based on race, color, religion, sex, national origin, disability, age,
> genetic information, or retaliation for opposing discrimination.

Intake Questionnaire (emphasis in original).

> Scott did not check Box 1, which states

> I want to talk to an EEOC employee before deciding whether to file a charge. I
> understand that by checking this box, I have not filed a charge with the EEOC. **I also
> understand that I could lose my rights if I do not file a charge in time.**

Intake Questionnaire (emphasis in original).

By checking Box 2, Scott intended to request agency action, and therefore intended the

questionnaire to be a charge, because the instructions state that petitioners who want to file a

charge should check Box 2, and Box 2 authorizes the EEOC to look into discrimination and does

not warn a petitioner that she could lose her rights by not filing a charge in time – in contrast to

Box 1 which expressly states that checking it does not constitute filing a charge and that a

petitioner could lose her rights if she does not file a charge in time. In *Enoch v. Becton,*

*Dickinson & Co.,* No. CIV.A. ELH-11-3551, 2012 WL 2371049 (D. Md. June 22, 2012),[2] the

court analyzed the language of an EEOC questionnaire with wording identical to the

questionnaire here and concluded that "[i]t is abundantly clear from the content of the Intake

Questionnaire that, by checking [the box], [the plaintiff] intended the questionnaire to be treated

as a charge, and that the EEOC also regarded as a charge a questionnaire on which [the box] was

checked." *Id*. at *7. "Judge Hollander's reasoning in *Enoch* is persuasive[.]" *Merchant v. Prince

George's Cty., Md.*, 948 F. Supp. 2d 515, 522 n.3 (D. Md. 2013).

      Scott's later-filed charge of discrimination relates back to the date the intake

questionnaire was filed. "[W]here a plaintiff's intake questionnaire constitutes a charge under

*Holowecki* but is unverified, the verification of a later-filed formal charge of discrimination can

relate back to cure the deficiency." *Merchant*, 948 F. Supp. 2d at 522. EEOC regulations define

"verified" to mean "sworn to or affirmed before a notary public, designated representative of the

[EEOC] or other person duly authorized by law…, or supported by an unsworn declaration in

writing under penalty of perjury." 29 C.F.R. § 1601.3. Scott's charge of discrimination, dated

August 17, 2013, is verified because Scott signed it "under penalty of perjury." (Charge of

Discrimination.) While the precise date Scott filed her intake questionnaire is unclear from the

exhibits being considered at this stage, the latest the questionnaire could have been filed is

January 28, 2013, the date MDPSCS received the notice of charge of discrimination from the

EEOC. Scott's claims are timely to the extent that they concern acts of discrimination that took

place within 300 days of the date she filed the intake questionnaire, which at the very latest was

January 28, 2013. Therefore, claims that occurred on or after April 3, 2012 – and claims earlier

than that date if she filed her questionnaire prior to January 28, 2013 – are not time-barred.

---

[2] Unpublished cases are cited not as precedent but for the relevance and persuasiveness of their reasoning.

Notably, Scott's claim of sex discrimination on April 12, 2012, is timely.

### B. Failure to State a Claim

"In order to make out a hostile work environment claim based on sex, 'a plaintiff must show that the offending conduct (1) was unwelcome, (2) was because of her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (4) was imputable to her employer.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 331 (4th Cir. 2011) (internal citations omitted). The defendant argues that Scott fails to state a claim because the conduct was not sufficiently "severe or pervasive." (Mot. Dismiss 8.)

In determining whether conduct is sufficiently severe or pervasive to establish an actionable hostile work environment claim, courts look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The plaintiff must show both that she "subjectively perceived the environment to be abusive" and that "the conduct was such that a reasonable person in the plaintiff's position would have found the environment objectively hostile or abusive." *Equal Emp't Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir.2008) (internal quotation marks and citations omitted).

Turning to this case, Davis regularly made "sexually suggestive comments… whenever Lt. Davis saw Plaintiff during work," including that Scott looked like his "baby mother" and that he wanted to "make a baby" with Scott. (Compl. ¶ 9.) Davis interfered with Scott's job duties by refusing to take work-related information from her, denying her requests for work assistance, and

failing to follow up with inmate issues that Scott reported. (Compl. ¶ 10.) The most severe

incident occurred on April 12, 2012, when Davis, in the presence of inmates, cursed at Scott,

pressed his chest on her arm, leaned over and whispered that he liked seeing her "angry" and

said, "I did not sleep with you last night and put marks of passion on you, so don't get sassy

because I could have." (Compl. ¶ 11.) While he spoke to her, he placed his lips on her ear lobe.

(Compl. ¶ 11.) When Scott tried to stop him, he told her she was "disrespectful" and that he can

"lean on whoever and whatever to talk, that's how I talk[.] I have the right to do that." (Comp. ¶

12.) Davis' conduct has caused Scott to suffer emotional distress requiring treatment by

psychotherapists. (Compl.  ¶ 25.) Taking these incidents as a whole, Scott states a claim that she

experienced sexual harassment that was "sufficiently severe or pervasive to alter the conditions

of her employment and create an abusive working environment." *Hoyle*, 650 F.3d at 331. *See*,

*e.g.*, *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir.1994) (supervisor's sexual innuendos,

inappropriate touching, and condescending language, in combination, were sufficiently severe

and pervasive to make out a sexual harassment claim). Consequently, the court will deny the

defendant's motion to dismiss Scott's sexual harassment claim.

## II.  Retaliation

Scott claims her "superiors" retaliated against her by assigning her to security posts

without a backup officer, denying her requests for a shift change and leave, and labeling her as a

"snitch" because she reported sexual harassment. (Compl. ¶ 27.) To establish a prima facie case

of retaliation, a plaintiff must show that she: (1) engaged in a protected activity; (2) the employer

acted adversely against her; and (3) the protected activity and the adverse action were causally

connected. *Holland v. Washington Homes, Inc*., 487 F.3d 208, 218 (4th Cir.2007). A plaintiff can

demonstrate that an employer "acted adversely" by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citation omitted); *see Darveau v. Detecon, Inc*., 515 F.3d 334, 342 (4th Cir.2008). The anti-retaliation provision of Title VII does not protect against "petty slights, minor annoyances, and simple lack of good manners" that will normally not deter employees from complaining to the EEOC. *Burlington*, 548 U.S. at 68.

Scott fails to state a claim for retaliation because she has not shown that MDPSCS acted adversely against her.[3] Her complaint makes no mention of how often she was assigned to a security post without a backup officer, but her EEOC charge of discrimination only mentions one instance, on June 23, 2012. (Charge of Discrimination.) Her complaint alleges very generally a denial of a request for a shift change and days of leave, but she fails to identify any specific supervisor who, with knowledge of her protected activity, denied these requests. Furthermore, Scott fails to identify an adverse employment action that her supervisors took because they thought she was a "snitch," and she does not claim that any of her supervisors, aside from Davis, called her a "snitch." Accordingly, Scott's retaliation claim will be dismissed.

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part MDPSCS's motion to dismiss. Scott's sex discrimination claim will proceed, while her retaliation claim will be dismissed.

---

[3] While not relevant to this determination, the record reflects that, in response to Scott's sexual harassment claim, MDPSCS conducted an investigation and Davis resigned. (Pl.'s Resp. in Opp'n, Ex. 1 at 2, ECF No. 17-2.)

A separate order follows.


October 2, 2015                                          _____/S/_____
Date                                                    Catherine C. Blake
                                                        United States District Judge